MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

STEPHEN MEYER (CABN 263954)
DANIEL KALEBA (CABN 223789)
Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, CA 95113
   Telephone: (408) 535-5032
   E-Mail: Stephen.Meyer@usdoj.gov
           Daniel.Kaleba@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 12-CR-0723 EJD |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT RODRIGUEZ'S SENTENCING MEMORANDUM |
| VICTOR RODRIGUEZ, | |
| Defendant. | |

    The government submits this memorandum to respond to points raised by defendant Victor Rodriguez's sentencing memorandum that have not already been fully addressed in the government's sentencing memorandum.

**I. The Ceres Robbery**

    As set forth in more detail in the PSR and the government's initial sentencing memorandum, in 2009, defendant Rodriguez committed an armed home invasion robbery of a family in which a couple and their two children were bound, beaten and threatened with death. Although arrested for this conduct

GOVT'S RESPONSE TO DEF. RODRIGUEZ'S SENTENCING MEMORANDUM
NO. 12-CR-0723 EJD

1

1  by local enforcement, the state case against Rodriguez was dismissed before trial, at which point
2  Rodriguez had spent nearly three years in jail awaiting trial.  Rodriguez has admitted to his participation
3  in this robbery as part of his plea agreement in the instant federal case.

4      One of the arguments in defendant's sentencing memorandum (subsection (c) at page 10), is that
5  the 33 months[1] Rodriguez already served in state custody awaiting trial for the robbery weighs against
6  factoring in the robbery conduct for an increased sentence.  This argument specifically attacks
7  Probation's recommendation for an upward departure, and the government is not seeking an upward
8  departure.  However, the government does rely on the robbery conduct as a significant reason for its
9  request for a sentence at the top of the applicable sentencing Guidelines range.

10     Rodriguez's participation in the armed home invasion robbery did not impact his Guidelines
11 calculation because his Total Offense Level was arrived at based on the murder offense conduct.
12 However, his admission of the robbery conduct does impact the calculation of his time credits by the
13 United States Bureau of Prisons ("BOP").  The parties agree that the time served in state custody will be
14 counted by BOP thereby reducing the defendant's remaining time to be served in the instant case.  Thus,
15 the net effect of admitting the robbery conduct is that Rodriguez's Guideline calculation remains
16 unchanged, but he will receive a credit of 33 months against whatever sentence this Court imposes.

17     The Ceres robbery was a violent crime with four victims, including two children.  The sentence
18 imposed on Rodriguez should reflect that conduct, in addition to the other criminal conduct he has
19 admitted (most significantly the murder of victim Victor Mendoza).  Currently, the Guidelines
20 calculation does not reflect the defendant's robbery conduct.  In other words, his Guideline calculation
21 would be the same if he admitted the robbery or not.  Therefore, the government asks that the Court
22 impose a sentence at the top of the applicable Guidelines range as a way to recognize that an increased
23 sentence is warranted based on the defendant's participation in a violent home invasion robbery in
24 addition to his crime of murder.  As previously argued in its initial sentencing submission, the robbery
25 conduct and the time served in state custody for the robbery, should also be considered as 3553(a)

---

[1] The government calculated the time served in state custody as 34 months, but will refer to the terms as 33 months for purposes of responding to the defendant's arguments.

GOVT'S RESPONSE TO DEF. RODRIGUEZ'S SENTENCING MEMORANDUM
NO. 12-CR-0723 EJD

factors demonstrating that defendant Rodriguez's is very difficult to deter.

**II. The Murder of Mendoza was a Planned Hunt for Norteños**

The defendant's sentencing submission (subsection (e) at page 11) argues that there is no evidence to support the notion that the murder of Victor Mendoza was premeditated or planned. The defense also claims that the murder of Victor Mendoza was motivated by the actions of the victim, specifically, the clothing worn by the victim on the day he was killed, and statements purportedly made by Mr. Mendoza to the defendants (subsection (c) at page 4).

First, the government disputes any factual assertion that Victor Mendoza was a gang member. The government interviewed numerous family members and friends of Mendoza. While some of them admitted that Mendoza had friends from school that had become Norteño gang members, and at least one friend admitted that he (Mendoza's friend) was himself a gang member, they all consistently stated that Mendoza was not a gang member. These accounts are corroborated by the lack of SJPD records indicating that Mendoza was a gang member, as well as jail records indicating that he was not a gang member when he was last incarcerated.[2] Thus, in the world of gang combatants, Victor Mendoza was a civilian. On the date of his murder, Victor Mendoza was returning home with his girlfriend from the veterinarian with their ill dog. When they returned home on Denair Street, they parked their car in the driveway. His girlfriend took their pet inside while Victor Mendoza removed their things from the car. Mendoza was not wearing a red bandana, as defendant claims (page 4, line 10). However, a red sweatshirt and a red towel/rag were found nearby the victim's body after he was shot. Nor did Mendoza say he was a Norteño prior to being shot, as the defendants claim. None of the five witnesses who were in front of their respective houses and within earshot of the defendants and victim Mendoza at the time of the shooting heard anyone say anything prior to the shooting. Thus, this was in no way a consensual back and forth among gang members that then escalated into murder. This was a hunt for rival gang members by the defendants that resulted in the death of a non-gang member who the defendants thought was a gang member based on the way he dressed.

---

[2] Some of Mendoza's neighbors interviewed by the government indicated that they would see Mendoza often wearing red and walking his dog to the park, and they assumed he was a Norteño gang member based on his red clothing.

GOVT'S RESPONSE TO DEF. RODRIGUEZ'S SENTENCING MEMORANDUM
NO. 12-CR-0723 EJD

Second, based on the defendant's admissions during his guilty plea allocution, which are reflected in his plea agreement, Rodriguez's murder of Mendoza was clearly premeditated. Defendant Rodriguez was armed with his .38 caliber revolver, and together with co-defendant Barajas, a fellow Sureño gang member, drove into a neighborhood known to be frequented by Norteños, for the purpose of finding someone to kill. Norteños had been spray painting gang graffiti on defendant Rodriguez's gang's turf, and committing acts of violence against fellow Enterprise members, so the defendants went looking for payback. Rodriguez was looking for trouble, and he caused it. Rodriguez observed Victor Mendoza, alone in his driveway, unarmed and vulnerable. After seeing Mendoza, Rodriguez told Barajas to turn the car around because, in Rodriguez's own words, that man was going to die right now. Rodriguez got out of the car and shot victim Mendoza in the face at close range. That is premeditated murder.

Finally, defendant Rodriguez's post-murder statements to the informant were more than general braggadocio. These statements furthered the defendant's standing within the enterprise. It was important to the defendant that he received credit for the murder. Like the tattoo he planned to get to memorialize the crime ("NK" for Norteño Killer), his statements were made to obtain praise and respect from within the enterprise. These were not statements of remorse, regret, or contrition. Murder was a crime he had dedicated himself to commit over a long period of time as a gang member.[3]

The defense submission also argues that defendant Rodriguez "needed" to commit the murder and that that it was "required" of him (page 14, lines 21-22), and makes a vague reference to a prior occasion in Modesto when Rodriguez was confronted by Norteños thus putting him in fear for his life in San Jose. Foremost, defendant was never threatened by the victim, and the killing was legally and morally unjustified. The victim was defenseless and blameless. Moreover, the defendant's attempt to paint Rodriguez as an otherwise good person who got caught up in gang crime is not accurate.

---

[3] As a Sureño gang member he committed to attack and kill rival Norteños generally, but he also separately committed to it in a prior murder plot against a specific NF member and he bragged that the murder of victim Mendoza was not the first shooting he did and therefore he knew how to clean the gun and destroy the clothes he wore. (PSR ¶ 26). Murder was on his mind so much that he stated that he would "always tell the homies: 'don't seek out to kill anybody, it is going to come. When it is your turn to try it yourself, the opportunity is going to come all by itself.'" (PSR ¶ 26).

GOVT'S RESPONSE TO DEF. RODRIGUEZ'S SENTENCING MEMORANDUM
NO. 12-CR-0723 EJD

Rodriguez freely chose the gang life as an adult. He did not get involved in gang activity until age 20. Once involved, he proved to be one of the more aggressive and violent gang members. In the Ceres home invasion robbery, he was identified as the most aggressive of the robbers: kicking the victim-father in the head and encouraging another robber to shoot the victim, which the other robber refused. For the murder of victim Mendoza, again defendant Rodriguez was the more aggressive of the two gang members involved. Rodriguez was armed and directed the driver of the car he was riding in to make a U-turn so that Rodriguez could shoot the victim. Rodriguez got out of the car and walked up to the victim who was standing alone, unarmed in his driveway, and Rodriguez shot and killed victim Mendoza at close range. Aside from these violent crimes, Rodriguez attended gang meetings, held firearms for the gang, and sold methamphetamine over the course of at least several months. Even now that he is in jail, Rodriguez continues to be an influential Sureño gang member and has at least attempted to coordinate the smuggling of drugs into the jail. Thus, Rodriguez has consistently demonstrated that he is not a reluctant gang member. Instead, his actions make clear that he sees being a gang member as his calling, and he goes above and beyond the minimum required of gang members.

**III. A Sentence of 412 Months Means Rodriguez Would be Only 50 Years Old When Released**

The defendant's sentencing submission argues that a sentence at the bottom of the applicable Guidelines range (412 months) would mean that Rodriguez would be in his mid to late 50s when he is released from prison. This is incorrect. As set forth in the government's initial sentencing submission, a sentence at the top of the applicable Guidelines range (485 months) would mean that Rodriguez would be 55 years old when he is released. In contrast, if the Court sentences the defendant to only 412 months, then he will be only 50 years old.[4] At age 50, Rodriguez would still represent a substantial danger to the community.

---

[4] This calculation factors in that inmates only typically serve 85% of the sentence imposed due to Bureau of Prison regulations regarding good behavior (effectively reducing a 412 month sentence to 350 months), as well as the credit for time served in state custody on the Ceres home-invasion robbery (34 months). Of the 316 months to serve, he has been in custody on the instant case since October 3, 2012, and therefore by the time he is sentenced at the end of January 2015 he will have already served 28 months leaving 288 months (approximately 24 years) to serve.

GOVT'S RESPONSE TO DEF. RODRIGUEZ'S SENTENCING MEMORANDUM
NO. 12-CR-0723 EJD

### IV. Recommendation for Housing the Defendant

The defendant's sentencing submission requests that the Court recommend to BOP that the defendant be housed as close to his family in San Jose as possible to facilitate family visits. Normally, the government does not oppose such requests. However, in gang cases involving Norteño or Sureño gang members, Probation and the government routinely request that the Court recommend housing the prisoner outside of California, Arizona, New Mexico, and Texas because these states (especially California) have the largest concentration of these gang members. Thus, defendant's argument that Probation's recommendation is motivated by retribution is unfounded. Based on the offense conduct in this case, as well as the defendant's efforts inside the jail to continue his gang association and activities, the government opposes the defendant's request to have the Court recommend that he be housed in California.

### **CONCLUSION**

For all of the foregoing reasons, the government respectfully recommends that the Court sentence the defendant at the high end of the applicable Guidelines range, which is 485 months imprisonment. The government also recommends a five-year supervised release term and a $400 Special Assessment.

Dated: January 22, 2015                                  Respectfully submitted,

                                                                   MELINDA HAAG
                                                                   United States Attorney

                                                                   /s/
                                                                  STEPHEN MEYER
                                                                  DANIEL KALEBA
                                                                  Assistant United States Attorneys

GOVT'S RESPONSE TO DEF. RODRIGUEZ'S SENTENCING MEMORANDUM
NO. 12-CR-0723 EJD